ORIGINAL

Approved: _____
CHRISTOPHER J. DIMASE / NICHOLAS FOLLY
Assistant United States Attorneys
JULIETA V. LOZANO
Special Assistant United States Attorney

Before:   HONORABLE KATHARINE H. PARKER
          United States Magistrate Judge
          Southern District of New York

**19MAG 8240**

- - - - - - - - - - - - - - - x
                              :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA      :
                              :   Violation of 18 U.S.C.
        - v. -                :   § 1001
                              :
DAVID R. PIKE,                :   COUNTY OF OFFENSE:
                              :   NEW YORK
        Defendant.            :
                              :
- - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   RONALD SHIMKO, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation and charges as follows:

### COUNT ONE
### (False Statements)

   1.  On or about December 4, 2018, in the Southern District of New York and elsewhere, DAVID R. PIKE, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, willfully and knowingly, falsified, concealed, and covered up by trick, scheme, and device material facts, and made materially false, fictitious, and fraudulent statements and representations, to wit, during a meeting with Special Agents from the Federal Bureau of Investigation and the Internal Revenue Service Criminal Investigation Division, and representatives of the United States Attorney's Office for the Southern District of New York, PIKE falsely stated, in sum and substance, that PIKE was not aware that approximately $400 million transferred into purported private equity funds that PIKE helped to manage was derived from an international multi-level marketing scheme known as "OneCoin" or belonged to Ruja Ignatova, the leader of that scheme, when in

truth and in fact, PIKE was aware that the money belonged to Ruja Ignatova and that it was derived from the OneCoin multi-level marketing scheme.

(Title 18, United States Code, Section 1001.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

2. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the New York Field Office and I have been employed in this position since March 2016. During that time, I have participated in investigations of securities and wire fraud schemes, bank fraud, and money laundering. I have received training in the investigation of financial crimes. Moreover, among other things, I have conducted or participated in surveillance, debriefings of witnesses, reviews of recorded conversations and financial records, and the execution of search warrants.

3. The information contained in this affidavit is based on, among other sources of information: (i) my personal knowledge; (ii) information provided by other law enforcement officers working on the investigative team (the "Investigative Team" or "Team"), including law enforcement officers at the Internal Revenue Service Criminal Investigation Division ("IRS CID"), the U.S. Attorney's Office for the Southern District of New York ("SDNY"), and the New York County District Attorney's Office ("DANY"); (iii) information that the Investigative Team has obtained from international law enforcement authorities pursuant to Mutual Legal Assistance Treaty ("MLAT") requests and other requests to foreign authorities; (iv) the review and analysis of various bank account records, including financial records obtained from international law enforcement authorities pursuant to MLAT requests and other requests to foreign authorities, conducted by members of the Investigative Team; (v) my participation in various witness interviews; (vi) my review, and the review by Team members, of e-mail evidence obtained pursuant to subpoenas, MLAT requests, and judicially authorized search warrants; (vii) open source research that I and other Team members have conducted on the Internet; and (viii) my training and experience concerning the commission of financial crimes. Because this affidavit is prepared for the limited purpose of establishing probable cause, I have not set forth each and every fact I have learned in connection with this investigation. Where communications and events are referred to herein, moreover, they are related in substance and in part.

2

Where dates, figures, and calculations are set forth herein, they are approximate.

## Overview

4. As described further below, DAVID R. PIKE, the defendant, was the Chief Operating Officer of a purported private equity fund management company. That company managed a series of purported private equity funds known as the "Fenero Funds." Rather than making legitimate private equity investments, the Fenero Funds served to launder the proceeds of a massive international pyramid fraud scheme involving the sale of a fraudulent cryptocurrency known as "OneCoin." On or about September 5, 2018, the Chief Executive Officer of the purported fund management company for the Fenero Funds, Mark S. Scott ("Scott"), was arrested on a sealed one-count Indictment filed in the Southern District of New York. The Indictment charged Scott with conspiracy to launder approximately $400 million of OneCoin fraud proceeds. The Indictment was unsealed following Scott's arrest.

5. At an interview with law enforcement agents conducted on the day of Scott's arrest, DAVID R. PIKE, the defendant, admitted, among other things, that he knew that the money transferred into the Fenero Funds belonged to Ruja Ignatova, the principal leader of the OneCoin fraud scheme. PIKE further admitted that all of the money was to be returned to Ignatova at some point. E-mail evidence gathered during the investigation corroborates PIKE's statement that PIKE was fully aware that the money transferred into the Fenero Funds belonged to Ignatova.

6. At a subsequent interview of PIKE on or about December 4, 2018, attended by me, an IRS-CID agent, and representatives of SDNY, PIKE lied and denied any knowledge that the money he and Scott managed in the Fenero Funds belonged to Ignatova or OneCoin. PIKE stated that he only learned that the money invested in the Fenero Funds was derived from those sources after the Indictment charging Scott was unsealed and made public.

## Background on OneCoin Ltd.

7. In or about 2014, OneCoin Ltd. was founded by Ruja Ignatova and a second individual ("Founder-2").[1] OneCoin Ltd.

---

[1] I have learned that OneCoin operates using several corporate entities and d.b.a. names, to include "OnePayments Ltd.,"

markets a purported digital cryptocurrency called "OneCoin" through a global multi-level marketing ("MLM") network. OneCoin members receive commissions for recruiting others to purchase cryptocurrency packages. This multi-level marketing structure appears to have influenced the rapid growth of the international OneCoin member network, including a significant number of members in the United States. OneCoin Ltd. has claimed to have over three million members worldwide. Records that I have obtained in the course of the investigation show that, between the fourth quarter of 2014 and the third quarter of 2016, OneCoin Ltd. generated approximately €3.4 billion in global sales revenue and earned "profits" of approximately €2.2 billion.

8. The evidence gathered in the course of the investigation demonstrates that OneCoin Ltd. is a pyramid fraud scheme. For example, in contrast to public representations that Ignatova and Founder-2 made, and caused to be made by OneCoin Ltd. to investors, OneCoins are not "mined" by members, nor is the value of OneCoin determined by market supply and demand. Beyond these misrepresentations, OneCoin Ltd. exhibits a variety of other features—including the fact that OneCoins have never been tradable on a public exchange—indicating that it is a fraud scheme and not a legitimate business.

9. OneCoin Ltd. continues to operate to this day.

### Background on the Fenero Funds

10. In or about February 2016, Mark Scott first met in person with Ruja Ignatova. Shortly thereafter, in late February 2016, Scott arranged for the incorporation of an entity in the British Virgin Islands ("BVI") named MSS International Consultants (BVI) Ltd. ("MSSI BVI"), which acted as a BVI investment fund manager. Scott owned MSSI BVI through a wholly-owned Florida corporation, and also served as a director and the Chief Executive Officer of MSSI BVI. Beginning in or about March 2016, DAVID R. PIKE, the defendant, was appointed as a director of MSSI BVI; PIKE also served as the Chief Operating Officer of MSSI BVI.

11. Through MSSI BVI, DAVID R. PIKE, the defendant, and Mark Scott operated a series of purported private equity

---

"OneNetwork Services Ltd.," "OneAcademy," and "OneLife." In this Complaint, I refer to these entities and d.b.a. names collectively as "OneCoin Ltd."

4

investment funds, including Fenero Equity Investments L.P., Fenero Equity Investments II, L.P., Fenero Financial Switzerland L.P., and Fenero Equity Investments (Cayman) I, L.P., (collectively, the "Fenero Funds"). PIKE and Scott established bank accounts at banks in the Cayman Islands for each of the Fenero Funds (the "Fenero Fund Accounts").

12. After DAVID R. PIKE, the defendant, and Mark Scott opened bank accounts for the Fenero Funds, between approximately June 2016 and February 2017, the Fenero Funds received the U.S. dollar equivalent of approximately $400 million in OneCoin proceeds. PIKE and Scott operated certain of the Fenero Funds with the assistance of a U.K. fund administration firm (the "U.K. Fund Administrator"), until the U.K. Fund Administrator grew concerned about the representations made by PIKE and Scott regarding the source of wealth funding the Fenero Funds and the relationship was terminated in or about August 2016.

### Indictment and Arrest of Mark Scott

13. On August 21, 2018, a Grand Jury sitting in the Southern District of New York returned a sealed one-count indictment, S6 17 Cr. 630 (ER) (the "S6 Indictment"), charging Mark Scott with conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h), in connection with his involvement in laundering OneCoin proceeds through the Fenero Funds. Specifically, the S6 Indictment alleges that from at least 2016 through 2018, Scott conspired to conceal the nature, location, source, ownership, or control of "approximately $400 million in proceeds of a pyramid scheme involving a purported cryptocurrency known as 'OneCoin.'"

14. On September 5, 2018, federal agents arrested Scott in Barnstable, Massachusetts. The same day, agents executed search warrants at Scott's residences in Massachusetts and Florida, and recovered various digital devices, among other items, pursuant to those search warrants. The S6 Indictment was unsealed later that day, when Scott appeared in federal court in Boston, Massachusetts for presentment.

### September 5, 2018 Interview of PIKE

15. At around the time of Mark Scott's arrest on September 5, 2018, prior to the unsealing of the S6 Indictment, agents approached and conducted a voluntary interview of DAVID R. PIKE, the defendant, concerning his involvement in operating MSSI BVI and the Fenero Funds. Two IRS CID agents participated in the interview in person. Another IRS CID agent and an SDNY agent

5

participated in the interview by telephone. During the interview, PIKE stated in substance and in part:

   a. In or about early 2016, Mark Scott approached PIKE and asked PIKE if he would work with Scott on a few "shelf" companies, including MSSI BVI and the Fenero Funds. PIKE agreed, and became a director and the Chief Operating Officer of MSSI BVI. Among other things, PIKE handled the completion of know-your-customer and anti-money laundering documentation, and the submission of that documentation to banks, in connection with MSSI BVI and the Fenero Funds.

   b. PIKE and Scott were responsible for managing approximately €450 million in the Fenero Funds. Ruja Ignatova was the ultimate beneficial owner of the money transferred into the Fenero Funds. In other words, all of the money belonged to Ignatova.

   c. Ignatova was involved with OneCoin. OneCoin was a mechanism by which Ignatova made money. PIKE conducted some online research relating to OneCoin, and learned that there were problems with OneCoin and Ignatova. PIKE's research revealed that OneCoin investors believed they had been cheated.

   d. PIKE did not earn a salary in connection with his work for MSSI BVI. Instead, Scott paid PIKE on a commission basis. Over the period of approximately one year that the Fenero Funds operated, PIKE earned about $1.2 million in such commissions.

   e. The Fenero Funds were shut down after about one year of operation. Scott told PIKE that Scott was returning the money to Ignatova. All of the funds went back to Ignatova at one point or another.

### E-mail Correspondence Involving PIKE and Others

 16. I have reviewed e-mail correspondence obtained from, among other sources: (i) materials voluntarily provided by DAVID R. PIKE, the defendant, following the above-described interview on September 5, 2018; (ii) the U.K. Fund Administrator, pursuant to one or more MLAT requests to the United Kingdom; and (iii) electronic devices recovered from Scott's residence pursuant to judicially authorized search warrants following Scott's arrest on September 5, 2018. The e-mail correspondence corroborates the statements made by PIKE during the September 5, 2018 interview to the effect that PIKE understood the money

6

transferred into the Fenero Funds belonged to Ignatova and was derived from the OneCoin scheme. For example:

      a. On or about May 27, 2016, Scott forwarded to PIKE an e-mail chain with subject line "Fenero Equity Investments L.P. - Wire Details," involving Ignatova and the head of OneCoin Ltd.'s accounting department (the "OneCoin Accountant"), among other individuals. At the bottom of the e-mail chain, Scott writes directly to Ignatova, providing account details for one of the Fenero Funds, noting that "[a]ll wires need to be in Euro denomination," and asking Ignatova to "[p]lease let us know when any of the parties has initiated a wire so that we can follow up from our end as well." Ignatova then responds to Scott, forwarding Scott an e-mail involving the OneCoin Accountant and others, in which she states, "Best is to send 5m (not less). Keep a balance of abt 3-4M at the accounts left." Ignatova subsequently asks Scott for the address of the Fenero Fund, and Scott provides her with the address. The OneCoin Accountant then sends Scott two wire transfer confirmations showing that two separate wire transfers to the Fenero Fund Account of 5 million each were initiated from accounts held by "International Marketing Services" in Germany and Singapore. As noted above, Scott forwarded the entire e-mail chain to PIKE. PIKE then flagged the e-mail for "follow up."

      b. On or about August 9, 2016, Scott e-mailed representatives of the U.K. Fund Administrator in response to the source of wealth for accounts held by International Marketing Strategies ("IMS"), which had funded transfers into several Fenero Fund Accounts. PIKE was copied on the e-mail. In the e-mail, Scott stated, in part: "Attached please find spot checks of one of the pooling accounts at [a bank] where IMS collects and manages the payments of the OneCoin customers . . . You will find pretty regular payment amounts ranging from a [OneCoin] starter package to [OneCoin] advanced packages and other extras."

      c. On or about August 10, 2016, in response to additional source of wealth related questions, Scott again e-mailed representatives of the U.K. Fund Administrator, copying PIKE, and stated, in part: "The monies are sales proceeds from the sale of OneCoin's product in different variations. Money is NOT held on behalf of OneCoin clients, it is OneCoin's money."

      d. On or about September 14, 2016, PIKE wrote to several individuals associated with OneCoin and Ignatova, copying Scott, stating in part: "[I]t is very important that you know that under the current circumstances we would have to list

7

Dr. Ignatova as the UBO of INNOIN and as I understand it this is unacceptable for everyone involved. Please discuss this internally as you develop the INNOIN profile." Based on my familiarity with this investigation and my review of other e-mail correspondence and evidence obtained in the course of the investigation, I believe that PIKE is discussing the organization of a new entity named "Innoin" for the purpose of moving and hiding the origin of OneCoin proceeds, and that PIKE is voicing his concern that Ignatova ("Dr. Ignatova") cannot be connected to the entity as its ultimate beneficial owner ("UBO").

   e.   On or about November 18, 2016, the OneCoin Accountant wrote an e-mail entitled "Balances and received transfers" to PIKE and Scott, among other individuals, and stated: "Dear David, Can you please send us your latest updated reconciliation file with all the balances?" The same day, Scott responded to the OneCoin Accountant, copying PIKE, writing, in part: "Actually, f[o]und an e-mail with the figures. She had asked me for available cash balances. Here [are] the available cash minus expenses and government and admin withholds. All loans made are considered available cash for obvious reasons." Scott then listed the funds available in each of the Fenero Fund Accounts and various purported loans that had been made out of the Fenero Fund Accounts. Based on my familiarity with this investigation and my review of other e-mail correspondence and evidence obtained in the course of the investigation, I believe that: (i) the OneCoin Accountant was asking DAVID PIKE to provide the balances of Ignatova's money in the Fenero Accounts, a task that PIKE was asked to perform regularly ("Dear *David*, Can you please send us your *latest reconciliation file*"); (ii) when Scott stated in his responsive e-mail copying PIKE that "*she* had asked me for available cash balances," Scott was referring to Ignatova; (iii) Scott, in his responsive e-mail copying PIKE, then provided the requested accounting of Ignatova's available funds to the OneCoin Accountant; and (iv) the "loans" reflected in Scott's list largely refer to fake loans made for the purpose of returning funds to Ignatova ("All loans made are considered available cash for obvious reasons").

   f.   On or about November 23, 2016, Ignatova wrote an e-mail directly to Scott with subject line "straighten up reporting," stating, in part: "Mark[,] Every week we have issues with your reporting. Speak to David and please report to us the same number as you did to me last week. All MONEY that I have not spent from the funds [. . .] This leads really to major disruptions[.] THX[,] R." The same day, Scott responded to Ignatova, writing, in part: "Hi Ruja, Our understanding was that

8

David only reported numbers when new funds come in. No new funds have hit any of the accounts, that's why he has not. The only shift in funds is the deduction of fees of about $1.2 Mio from [one of the Fenero Fund Accounts]." Based on my familiarity with this investigation and my review of other e-mail correspondence and evidence obtained in the course of the investigation, I believe that Ignatova was complaining to Scott that PIKE was not meeting his regular reporting obligations regarding her assets in the Fenero Funds, and that Scott was providing an excuse for PIKE's failure to provide such a report to Ignatova in a timely fashion.

### Interview of PIKE on December 4, 2018

17. On or about December 4, 2018, several months after Scott was arrested and the S6 Indictment was unsealed, I interviewed DAVID R. PIKE, the defendant, along with an agent from IRS CID and several representatives from SDNY. PIKE was represented by counsel during the interview, which took place at counsel's office in Coral Gables, Florida. At the outset of the interview, PIKE was apprised of the identities of those present at the interview, including several federal prosecutors from SDNY, and the nature of the interview. PIKE acknowledged that he understood that lying to federal agents was a crime. During the interview, among other things, PIKE stated in substance and in part:

   a. Scott ran the Fenero Funds. PIKE was a director, but did not run the Funds. PIKE was paid $3,500 a month to review operational deals and to sign off as a director for the funds.

   b. PIKE did not have an understanding that the money that was managed in the Fenero Funds was from Ruja Ignatova or OneCoin until after Scott was publicly charged.

WHEREFORE, deponent prays that an arrest warrant be issued for DAVID R. PIKE, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

RONALD SHIMKO
Special Agent
Federal Bureau of Investigation

Sworn to before me this
29th day of August, 2019

THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

10